284 F.2d 861
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
MIRANDA FUEL CO., Inc., Respondent.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
LOCAL 553, INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Respondent.
 No. 70, Docket 26232.
 United States Court of Appeals Second Circuit.
 Argued Nov. 2, 1960.
Decided Nov. 28, 1960.
 
 Herman M. Levy, Atty., National Labor Relations Board, Washington, D.C. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Asso. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Melvin J. Welles, Atty., National Labor Relations Board, Washington, D.C., on the brief), for petitioner.
 Jack Last, New York City (Stanley B. Blumberg, of Cohen & Weiss, New York City, on the brief), for respondent Local 553, Intenrnational Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.
 Before SWAN, CLARK, and MEDINA, Circuit Judges.
 CLARK, Circuit Judge.
 
 
 1
 The National Labor Relations Board petitions for enforcement of an order enjoining respondents Miranda Fuel Co., Inc., and Local 553, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, from giving effect to any arrangement which delegates to the Union exclusive control over the seniority status of the Company's employees. The order further directs the Company to restore Michael Lopuch, an employee and a member of the respondent Union, to the seniority position of which he had been deprived at the request of the Union. The Board has found that the Company, by acquiescing in the Union's insistence that Lopuch lose his seniority, violated 8(a)(3) and (1) of the National Labor Relations Act, as amended, 29 U.S.C. 158(a)(3) and (1), and that the Union violated 8(b)(1)(A) and (2) of the Act, as amended, 29 U.S.C. 158(b)(1)(A) and (2).
 
 
 2
 Lopuch's loss of seniority arose in the following manner. In April 1957, Lopuch had been employed as a truck driver by the Company, a seller of fuel oil, for approximately eight or nine years. He then enjoyed the eleventh position on a seniority list of approximately twenty-one. About the beginning of April 1957, Lopuch spoke to Jerry and Fred Miranda, chief officers of the Company, and told them he wished to spend the summer in Ohio and do some work for his sister-in-law, whose husband had just died. The period from April 15 to October 15 was a slack season in the fuel oil business, and was so designated in section 5 of the collective bargaining agreement between the Union and the Company, quoted below. Lopuch obtained permission to leave at the close of business on Friday, April 12, 1957. He told his employers he would return by October 12. In mid-October, however, Lopuch got sick, and he did not return to work until October 30. The illness was evidenced by a doctor's certificate, and the late return was excused by the Company.
 
 
 3
 Shortly after his return, the Union, at the urging of various of its members, demanded that the Company reduce Lopuch to the foot of the seniority list, on the ground that his late return violated section 8 of the collective bargaining agreement. The relevant portion of that section provides:
 
 
 4
 'During the slack season, April 15 to October 15, any employee who according to seniority would not have steady employment shall be entitled to a leave of absence and maintain his full seniority rights during that period. Any man so described must report to the Shop Steward not later than 8 A.M. on October 15 and sign the seniority roster in order to protect his seniority, and the Employer agrees to accept the certification of said Shop Steward as to availability of such men when called by the Employer. If October 15 falls on a Saturday or Sunday, the reporting day shall be the next work day. Any man failing to report as above specified shall forfeit all seniority rights.'
 
 
 5
 When the Union discovered that Lopuch's failure to return to work on time was because of an excused illness, it abandoned the claim that he be dropped from seniority because of a late return to work. Instead, it insisted that he be reduced in seniority because he had left work before April 15. Jerry Miranda, who did not think that Lopuch's early departure would cause any loss of seniority when he gave permission to leave on April 12, was reluctant to agree to this request. But in matters affecting seniority, Miranda let the Union decide 'the difference between right and wrong.' Accordingly, Miranda acquiesced in the Union's demand that Lopuch be dropped to the bottom of the seniority list.
 
 
 6
 We agree with the Board's conclusion that Lopuch, in leaving work three days early with the employer's permission, did not lose seniority rights under section 8 of the collective bargaining agreement. The Board found that Lopuch would have had steady employment during the slack season if he had not obtained his leave of absence. Therefore, the Board concluded that the leave of absence could not be regarded as taken under section 8 which assures the right to such leave only for employees who would not have steady employment. Whether or not this interpretation is correct, it is clear that section 8, by its terms, compels a loss of seniority only for failure to return promptly, not for an early departure taken with the permission of the employer. Since, as the Union points out, these strict deadlines are for the purpose of assuring the employee an adequate labor force when needed, a three days' leeway in the date of departure ought certainly to be available in the discretion of the employer. Accordingly, we are compelled to conclude that section 8 of the agreement did not justify any forfeiture of Lopuch's seniority rights; and the action taken in conflict with the agreement constituted a delegation of power over seniority rights which improperly encouraged union membership and discriminated against the employee Lopuch.
 
 
 7
 We find it necessary to emphasize that the action taken was against and not under the agreement lest there be confusion as to the existing law as we feel called upon to apply it. In Local 553, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. N.L.R.B., 2 Cir., 266 F.2d 552, we held a substantially identical agreement valid and refused to enforce the Board's order in Meenan Oil Co., Inc., 121 N.L.R.B. No. 71. We held that provisions for seniority stand in a collective bargaining agreement and depending on objective criteria, whose application involved merely administrative or ministerial functions on the part of the shop steward, did not give improper authority to a union to encorage union membership or to discriminate against individual employees. And we reiterated this holding in our decision in N.L.R.B. v. News Syndicate Co., 2 Cir., 279 F.2d 323, 329-330, certiorari granted 81 S.Ct. 166, pointing to the arbitration clause these (and here) present as reinforcing the view that no exclusive authority over seniority was given the Union. But in its decision in the present case the Board, while finding the facts was accept as the basis of decision, went on to say that it adhered to its Meenan holding and concluded again that the section 8 provisions unlawfully delegated exclusive control over seniority rights to the Union. We think our decisions correctly interpret the law, and until or unless the Supreme Court bids otherwise they must stand. Accordingly it must be understood that paragraphs A(1)(a) and B(1)(a) of the order, referring to any 'arrangement or understanding' which delegates to the Union exclusive control over seniority, do not refer to or include section 8 of the present collective bargaining agreement, but rather designate the oral and superseding understanding reducing Lopuch's seniority which the Board found upon evidence we think adequate.
 
 
 8
 Enforcement granted.